ORIGINAL

EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI #2286
Chief, Narcotics Section

MARK A. INCIONG  CA BAR #163443
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail: mark.inciong@usdoj.gov

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 0 7 2006

at ____ o'clock and ____ min. ___M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00235 DAE |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF PLEA AGREEMENT |
| | ) | |
| vs. | ) | Date:  February 7, 2006 |
| | ) | Time:  1:30 p.m. |
| ALBERTO GONZALEZ, | ) | Judge: Hon. Kevin S. C. Chang |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OF PLEA AGREEMENT

        Pursuant to Rule 11 of the Federal Rules of Criminal

Procedure, the UNITED STATES OF AMERICA, by its attorney, the

United States Attorney for the District of Hawaii, and the

Defendant, ALBERTO GONZALEZ, and his attorney, Christopher R.

Oram, Esq., have agreed upon the following:

        1.    Defendant acknowledges that he has been charged in

an Indictment with violating Title 21, United States Code,

Sections 846, 841(a)(1) and (b)(1)(A).

2.    Defendant has read the charges against him contained in the Indictment and those charges have been fully explained to him by his attorney.

3.    Defendant fully understands the nature and elements of the crimes with which he has been charged.

4.    Defendant will enter a voluntary plea of guilty to the Indictment charging him with conspiracy to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers and salts of its isomers.

5.    Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6.    Defendant enters these pleas because he is, in fact, guilty of conspiring to distribute 500 grams or more of a mixture and substance containing a detectable amount methamphetamine as charged in the Indictment, and agrees that his plea is voluntary and not the result of force or threats. Further, Defendant understands that he has been charged with an offense that requires the Government to prove beyond a reasonable doubt to a jury that he is responsible for conspiring to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers.  Defendant agrees that he is

knowingly responsible for conspiring to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers and hereby waives any and all right he has to have a jury determine drug type and weight beyond a reasonable doubt.

       7.  Defendant understands that the penalties for the offenses to which he is pleading guilty include:

       a.  Imprisonment for not more than life, a fine of up to $4,000,000, or both, and a term of supervised release of not less than five (5) years and up to life;

       b.  A mandatory minimum term of imprisonment of ten (10) years; and

       c.  At the discretion of the Court, defendant may also be denied any or all federal benefits, as that term is defined in 21 USC §862, (a) for up to five years if this is defendant's first conviction of a federal or state offense consisting of the distribution of controlled substances, or (b) for up to ten years if this is defendant's second conviction of a federal or state offense consisting of the distribution of controlled substances. If this is defendant's third or more conviction of a federal or state offense consisting of the distribution of controlled substances, the defendant is permanently ineligible for all federal benefits, as that term is defined in 21 USC §862(d);

d.   In addition, the Court must impose a $100 special assessment as to each count to which the Defendant is pleading guilty.  Defendant agrees to pay $100 for each count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing.  Defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this agreement at its option.

8.   Defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charge to which Defendant is pleading guilty:

a.   In or about February, 2004, defendant ALBERTO GONZALEZ (hereafter "GONZALEZ") agreed with Lawrence Alcasid (hereafter "Alcasid"), Vinh Sivongxay (hereafter "Sivongxay"), and others, to provide pound quantities of methamphetamine to Alcasid for further distribution in the State and federal District of Hawaii.

b.   In or about November, 2004, Alcasid purchased approximately six and one-half pounds of methamphetamine from GONZALEZ in Las Vegas, Nevada. Alcasid and Sivongxay then packed the drugs into a box

4

and Alcasid mailed the box containing the six and one-half pounds of methamphetamine to Honolulu, Hawaii where it would be further distributed.

c.    In or about February, 2005, GONZALEZ provided Alcasid with approximately five (5) pounds of methamphetamine in Las Vegas, Nevada. Alcasid received the five pounds of ice from an associate of GONZALEZ. Alcasid, in turn, sent the drugs to an associate in Hawaii for further distribution in Hawaii.

d.    On or about April 21, 2005, GONZALEZ supplied Alcasid with approximately seventeen (17) pounds of methamphetamine in Las Vegas, Nevada. The drugs were packed into two (2) boxes and mailed by Express Mail to Honolulu, Hawaii. One box was mailed to 1982 Kalakaua Avenue, Apt. C, Honolulu, Hawaii 96815. The other box was mailed to 2627 Nakookoo Street, #6, Honolulu, Hawaii 96824. The parcels containing the drugs were mailed to Honolulu with the intent to further distribute the 17 pounds of methamphetamine on the island of Oahu.

e.    On or about May 4, 2005, GONZALEZ supplied Alcasid with approximately four pounds of methamphetamine in Las Vegas, Nevada. The drugs were mailed to Honolulu,

Hawaii for further distribution in the State and
federal District of Hawaii.

f.    On or about May 20, 2005, GONZALEZ spoke on the
telephone with Alcasid and told Alcasid, "They should
be ready Monday . . . the just called me to make sure
you are ready . . . I'll be ready.  Everything is all
gathered up together."  In the conversation, GONZALEZ
was advising Alcasid that Alcasid should have a payment
of approximately $150,000 ready by Monday and GONZALEZ'
suppliers would have multi-pound quantities of
methamphetamine to exchange for the money at that time.

g.    On or about May 25, 2005 GONZALEZ met with Alcasid in
Alcasid's vehicle in the parking lot of the Home Depot
store located at 1275 W. Craig Road, Las Vegas, Nevada.
During their conversation, GONZALEZ told Alcasid that
he was expecting over 60 pounds of methamphetamine to
be delivered by his supplier.  GONZALEZ explained that
he would give 21 pounds of the methamphetamine to
Alcasid to distribute and GONZALEZ would keep another
21 pounds for himself to distribute.

h.    Laboratory analysis of the substance GONZALEZ provided
to Alcasid which was then mailed to Honolulu, Hawaii on
April 21, 2005 revealed it to be 6,194 grams of actual,
or pure, methamphetamine.  Laboratory analysis of the

6

substance GONZALEZ provided to Alcasid which was then mailed to Honolulu, Hawaii on May 4, 2005, revealed it to be 1,711 grams of actual, or pure, methamphetamine. The analysis of the drugs is more specifically described in paragraph 10(b), below.

9.   Pursuant to CrimLR32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charges to which the Defendant is pleading guilty adequately reflect the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

10.   Pursuant to CrimLR32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of Defendant in connection with this matter:

a.   The parties stipulate to the facts as set forth in paragraph 8 of this agreement.

b.   The parties further agree that Defendant is responsible for 7,990 grams of actual methamphetamine - the total amount of the methamphetamine the Defendant provided to Alcasid on or about April 21, 2005 and May 4, 2005 that was then mailed to Honolulu, Hawaii from Las Vegas, Nevada.  Additionally, the parties agree that Defendant is responsible for an additional

7

fifty-three (53) and one-half pounds of methamphetamine: the
total of the six and one-half pounds Defendant supplied to
Alcasid in or about November, 2004; the five pounds of
methamphetamine Defendant supplied to Alcasid in February, 2005;
and the 42 pounds of methamphetamine which the Defendant arranged
to obtain for himself and Alcasid in late May, 2005.

The results of the laboratory analysis of the
methamphetamine seized are as follows:

| DEA Ex.#: | Controlled Substance: | Net Wgt: | Purity: | Pure Wgt: |
|-----------|----------------------|----------|---------|-----------|
| 1 | d-Methamphetamine Hydrochloride | 3109 gm | 99% | 3077 gm |
| 2 | d-Methamphetamine Hydrochloride | 3117 gm | 100% | 3117 gm |
| 7 | d-Methamphetamine Hydrochloride | 1764 gm | 97% | 1711 gm |

The foregoing chemical analysis was conducted by the DEA
Southwest Laboratory. D-Methamphetamine Hydrochloride is a
methamphetamine salt and a Schedule II controlled substance. The
substance in DEA Exhibits 1, 2, and 7 is "ice" as that term is
defined in Note C to the Drug Quantity Table in Guidelines
Section 2D1.1(c).

c. The total weight of the pure methamphetamine,
described above, and the additional fifty-three (53) and one-half
pounds of a mixture and substance containing a detectable amount
of methamphetamine which the Defendant distributed, and arranged

to distribute, between November, 2004 and May, 2005 places the
Defendant at a base offense level of 38 under the Sentencing
Guidelines.

       d.   The United States Attorney agrees that
Defendant's agreement herein to enter into a guilty plea
constitutes notice of intent to plead guilty in a timely manner,
so as to permit the government to avoid preparing for trial as to
Defendant.  Accordingly, the United States Attorney anticipates
moving in the Government's Sentencing Statement for a one-level
reduction in sentencing offense level pursuant to Guideline
§ 3E1.1(b)(2), if defendant is otherwise eligible.
The Defendant understands that notwithstanding its present
intentions, and still within the Agreement, the prosecution
reserves the rights (1) to argue to the contrary in the event of
receipt of new information relating to those issues, and (2) to
call and examine witnesses on those issues in the event that
either the probation office finds to the contrary of the
prosecution's intentions or the Court requests that evidence be
presented on those issues.

       e.   Defendant will request that Guideline § 5C1.2
be applied to permit the court to impose a sentence below the
statutory minimum.  The Government will recommend applying
§ 5C1.2 only if the United States Probation Department finds that
Defendant meets the requirements of that section and the attorney

for the Government finds that Defendant has truthfully disclosed
to the Government all information and evidence concerning the
offense.

   f. The Government will recommend that Defendant
be sentenced to the low end of the guideline range found by the
court.  However, if the court adopts an offense level or downward
adjustment or departure below the Government's recommendations in
this plea agreement, the Government will recommend a sentence as
near as possible to what the sentence would have been if the
Government's recommendations had been followed.

   11. The parties agree that notwithstanding the
parties' Agreement herein, the Court is not bound by any
stipulation entered into by the parties but may, with the aid of
the presentence report, determine the facts relevant to
sentencing.

   12. The parties are presently unaware of any factual
disputes affecting the sentencing of defendant herein.

   13. The Defendant is aware that he has the right to
appeal the sentence imposed under Title 18, United States Code,
Section 3742(a).  Defendant knowingly waives the right to appeal,
except as indicated in subparagraph "b" below, any sentence
within the maximum provided in the statute(s) of conviction or
the manner in which that sentence was determined on any of the
grounds set forth in Section 3742, or on any ground whatever, in

exchange for the concessions made by the prosecution in this plea agreement.

a.   The Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

b.   If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the Defendant, the Defendant retains the right to appeal the  portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined under Section 3742 and to challenge that portion of his sentence in a collateral attack.

c.   The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

14.   The Defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines.  The Defendant agrees that there is no promise or guarantee of the applicability or nonapplicability of

any Guideline or any portion thereof, notwithstanding any
representations or predictions from any source.

      15.  The Defendant understands that this Agreement will
not be accepted or rejected by the Court until there has been an
opportunity by the Court to consider a presentence report, unless
the Court decides that a presentence report is unnecessary.  The
Defendant understands that the Court will not accept an agreement
unless the Court determines that the remaining charges adequately
reflect the seriousness of the actual offense behavior
and accepting the agreement will not undermine the statutory
purposes of sentencing.

      16.  Defendant understands that by pleading guilty he
surrenders certain rights, including the following:

      a.  If Defendant persisted in a plea of not guilty
to the charges against him he would have the right to a public
and speedy trial.  The trial could be either a jury trial or a
trial by a judge sitting without a jury.  The Defendant has a
right to a jury trial.  However, in order that the trial be
conducted by the judge sitting without a jury, the Defendant, the
prosecution and the judge all must agree that the trial be
conducted by the judge without a jury.

      b.  If the trial is a jury trial, the jury would
be composed of twelve laypersons selected at random.  Defendant
and his attorney would have a say in who the jurors would be by

12

removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.  The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the Defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

   c.  If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the Defendant's guilt beyond a reasonable doubt.

   d.  At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the Defendant.  Defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them.  In turn, Defendant could present witnesses and other evidence on his own behalf.  If the witnesses for the Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

   e.  At a trial, the Defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

f.   At a trial, Defendant would have a right to have the jury determine beyond a reasonable doubt the quantity and weight of the controlled substances charged in the indictment.

17.   Defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph.  Defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

a.   Defendant further waives his Rule 16 right to full discovery in this matter.

18.   Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce Defendant to plead guilty.

19.   Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto. The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

20.   Defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of Defendant's conduct regarding the charges against him, related matters, and any matters in

14

aggravation or mitigation relevant to the issues involved in sentencing.

21.    The Defendant agrees that he will fully cooperate with the United States.

a.    He agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests him to testify, including, but not limited to, any grand jury proceedings, trial proceedings involving codefendants and others indicted later in the investigation, and related civil proceedings.

b.    Defendant agrees to be available to speak with law enforcement officials and to representatives of the United States Attorney's Office at any time and to give truthful and complete answers at such meetings, but he understands he may have his counsel present at those conversations, if he so desires.

c.    Defendant agrees he will not assert any privilege to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crimes in this Indictment or any subsequent charges related to this investigation, at which the prosecution requests him to testify.

d.    Pursuant to § 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except

15

as may be provided in this Agreement and under § 1B1.8(b) of the Sentencing Guidelines.

22.    In the event that the Defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after Defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case in chief in the trial of the Defendant in this matter.    Defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

23.    Pursuant to Guideline Section 5K1.1 and Rule 35(b), Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the Defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense.    Pursuant to Title 18, United States Code, Section 3553(e), the prosecution may also move the Court to impose a sentence below the level established by statute as a minimum sentence on the ground that Defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense.    Defendant understands that:

a.   The decision as to whether to make such a request or motion is entirely up to the prosecution.

b.   This Agreement does not require the prosecution to make such a request or motion.

c.   This Agreement confers neither any right upon the Defendant to have the prosecution make such a request or motion, nor any remedy to Defendant in the event the prosecution fails to make such a request or motion.

d.   Even in the event that the prosecution makes such a request or motion, the Court may refuse to depart from the Guidelines or to impose a sentence below the minimum level established by statute.

DATED:  _____Feb. 7th_____ , at Honolulu, Hawaii.

AGREED:


EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

ALBERTO GONZALEZ
Defendant


FLORENCE T. NAKAKUNI
Chief, Narcotics Section

CHRISTOPHER R. ORAM, Esq.
Attorney for Defendant


MARK A. INCIONG
Assistant U.S. Attorney

17