CHRISTOPHER R. ORAM, ESQ.
Nevada State Bar #004349
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 384-5563

BIRNEY B. BERVAR (Bar No. 5482)
BERVAR & JONES
1001 Bishop Street
1400 Pauahi Tower
Honolulu, Hawaii 96813
(808)-550-4990

Attorneys for Defendant
ALBERTO GONZALEZ

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

* * * * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ALBERTO GONZALEZ,<br><br>Defendants. | Criminal No. 05-00235-JMS<br><br>**DEFENDANT'S MOTION FOR CONSIDERATION OF MITIGATION AND/OR DOWNWARD DEPARTURE FROM THE ADVISORY GUIDELINES** |

COMES NOW, the Defendant, ALBERTO GONZALEZ, by and through his attorneys of record, CHRISTOPHER R. ORAM, ESQ. and BIRNEY B. BERVAR, ESQ., and hereby submits to this Honorable Court this Motion for Consideration of Mitigation and/or Downward Departure From the Advisory Guidelines.

## I. INTRODUCTION

Mr. Gonzalez respectfully submits this Memorandum in order to provide information to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purpose of punishment, as required by 18 U.S.C. § 3553(a) in light of the United States v. Booker, 125 S. Ct. 738 (2005).

Booker restored the district court's ability to fashion a sentence tailored to the individual circumstances of the case and defendant by requiring courts to consider factors other than the sentencing range prescribed by the United States sentencing guidelines. Indeed, under § 3553(a) courts are required to sentence below the range if such a sentence would be sufficient to achieve the purpose of punishment.

Here, Mr. Gonzalez respectfully requests that the Court consider several important circumstances of this case in fashioning a sentence. First, Mr. Gonzalez's willingness to immediately inform authorities of his criminal culpability and thereafter, consistent acceptance of responsibility. Second, Mr. Gonzalez's relatively good character and personal history as has been attested to by the pre-sentence report and letters written to the Court, that show that Mr. Gonzalez is unlikely to pose any risk of recidivism Third, Mr. Gonzalez has already faced ruination losing his freedom, privilege of maintaining his family (including three young children), the prospect of being forever branded a felon. Lastly, Mr. Gonzalez would respectfully request that this Court consider the sentences that his three co-defendant's have received which

are substantially less than the guidelines recommendation for Mr. Gonzalez. Yet, their culpability was equally if not more involved than Mr. Gonzalez.

These circumstances alone warrant a sentence substantially below that provided by the sentencing guidelines.

## II.   PROCEDURAL BACKGROUND

Mr. Gonzalez pleaded guilty to one count of Conspiracy to Distribute 500 grams or more of Methamphetamine in violation of 21 U.S.C. § 846, 841 § (a)(1), and (d)(1)(a), a class A felony. Mr. Gonzalez now stands before the Court for sentencing.

## III.   POST BOOKER SENTENCING CONSIDERATIONS

The Court is aware of the broad ramifications of United States v. Booker for this proceedings. Sentencing guideline range is no longer binding on the Court, but is only one of five factors to be considered in determine the sentence. Booker 125 S. Ct. at 764-765. The other four factors are (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentence available; (3) the need to avoid unwarranted sentencing disparity; and (4) the need to provide restitution. Id. ; 18 U.S.C. § 3553 (a)(1)(a)(3)(a)(6-7).

In considering section 3553 § (a) factors, the sentencing guidelines are to be given no more or less weight than any other factor. See United States v. Jaber, 362 F. Supp. 2d. 365, 370-76 (D. Mass. 2005) (providing comprehensive analysis of why

sentencing guidelines do not reflect statutory purposes of punishment); United States v. Ranum, 353 F. Supp. 2d. 984, 987 (E. D. Wis. 2005).

Perhaps even more important, however, is that Booker establishes a new, independent limit on the sentence that may be imposed. The primary sentence mandate of § 3553(a), States the Court must impose the minimally sufficient sentence to achieve the statutory purposes of punishment, justice, deterrence, incapacitation, and rehabilitation:

> The Court shall impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553A2. 18 U.S.C. 3553A.

This so called (parsimony provision) is not simply a factor to be considered in determining sentence; it represents a cap above which the Court is statutorily prohibited from sentencing- even when a greater sentence is recommended by the sentencing guidelines. See United States v. Denardi, 892 F. 2d 269, 276-77 (3rd Circuit 1989) (Becker, J. Concurring, in part, dissenting in part).

## IV. THE SENTENCING FACTORS AS APPLIED TO MR. GONZALEZ

Aside from the sentencing guidelines raised, two of the sections 3553 A factors are particularly relevant to defendant's case: the nature and circumstances of the offense and the history and characteristics of the defendant; and the kinds of sentences available. 18 U.S.C. § 3553(a) (1)(3).

## A. THE NATURE AND CIRCUMSTANCE OF THE OFFENSE AND DEFENDANT'S HISTORY AND CHARACTERISTICS.

On May 25, 2004, Mr. Gonzalez was arrested in Las Vegas pursuant to a federal arrest warrant. Thereafter, Mr. Gonzalez has expressed a willingness to accept responsibility for his conduct. Mr. Gonzalez entered a timely guilty plea in an effort to ensure that the Government would not have to prepare for trial.

Interestingly enough, Mr. Gonzalez had no prior juvenile adjudications (see pre-sentence report, pp. 11, paragraph 45). Mr. Gonzalez was ordered to go to the drug court program which he successfully completed on February 10, 1999. Mr. Gonzalez had been ordered to go through the drug court program for his only criminal entry listed on the pre-sentence report indicating that he was arrested or charged with under the influence of a controlled substance. The point is that Mr. Gonzalez has spent the vast majority of his life trouble free.

Mr. Gonzalez has never been accused of any type of violent behavior. More importantly, when Mr. Gonzalez was arrested in Las Vegas, agents searched the vehicle Mr. Gonzalez was present in and found no contra band or substantial amounts of money. Nor did the government find any type of weapon. It was the government's position that Mr. Gonzalez was proceeding to meet with a confidential informant to conduct a large scale drug transaction. Mr. Gonzalez accepts full responsibility for his criminal conduct on that day, however, Mr. Gonzalez would ask the Court to consider that he was not in possession of any type of weapon that could cause harm

to either a potential co-defendant or law enforcement officer.

On August 21, 2006, the undersigned sent three character letters to the Court on behalf of Mr. Gonzalez. These people have taken it upon themselves to write to this Court to share their impression of Mr. Gonzalez, hoping to give some insight into the person before the Court for sentencing. (See letters sent to the Court on August 21, 2006). The nature and content of these letters speak well of Mr. Gonzalez. This Court received a letter from Luis Aceves, explaining that:

> I met Albert when he was in his freshman year of high school. We all grew up in a bad neighborhood in East Los Angeles area in a city called, Pico Rivera. It was easy for us all to get along since he and his four brothers and my two brothers and I were the only kids in our neighborhood not in gangs (first paragraph, letter dated August 16, 2006).

In fact, the pre-sentence report verifies that Mr. Gonzalez's legal address is in Pico Rivera, California (pre-sentence report, pp. 2).

Mr. Aceves, explains that he believes that Albert is an honest person, who although he has made some bad decisions in life, is working towards changing for the better. Mr. Aceves also notes that Mr. Gonzalez has had significant dedication to his family and was always loyal to his friends. Mr. Aceves explains, "[H]is time in jail has really helped change his outlook on life and is determined to use it as a reason to change is way of life for good."

The Court received a letter from Ms. Tanya Panya-Aguirre, indicating that she is the mother of Mr. Gonzalez's three children. Ms. Aguirre concluded the thoughts:

> I know Albert Gonzalez is remorseful of what has occurred. He takes responsibility for his actions. He has never been in trouble with the law before and I believe he chose to do what he did to make a better life for us because he has always gone without. He wanted our kids to have everything and lack nothing. But now they have nothing if daddy is not there. Albert learned that he couldn't put a price on his family's future or his absence at home." (Last page, Ms. Aguirre's letter).

Ms. Maria Garcia, Mr. Gonzalez's neighbor, took the time to write to this Court. Ms. Garcia explains,

> As a boy, he was always a bit shy around the neighborhood, but was always willing to help my son clean around the house or give my car a tune-up. I have seen him give money or food without hesitation, to those begging on the streets. It also pleased me that Albert never got involved in any gang activity, and for the most part, kept to himself and his family. (See letter of Ms. Garcia).

Ms. Garcia concludes by explaining, "[Y]our Honor, I understand that Albert has gotten himself into trouble, but please understand that inside he is a genuine man, with a good heart."

The letters provided to the Court were from people who have had a long standing relationship with Mr. Gonzalez and are aware of his truly good characteristics.

Mr. Gonzalez addressed a letter to this Court dated August 2, 2006. Mr. Gonzalez expressed sincere remorse and acceptance of responsibility for his conduct. Mr. Gonzalez graduated from high school in 1997 and was consistently employed as the pre-sentence report suggests (pre-sentence report, pp. 14, paragraph 62-65). According to Mr. Gonzalez, he was employed consistently from 2000 thru 2005.

Interestingly enough, Mr. Gonzalez explained to this Court:

> Until about a year ago before my arrest my life took a turn for the worst. As a young successfully Hispanic it was very easy for a drug dealer to prey on me due to the ties I had to the younger generation. Traveling to Las Vegas, Nevada about twice a month. I was presented a paradise and fantasy life.

Mr. Gonzalez further explained, "[N]ow that I have been incarcerated for over a year, I have come to find out how much damage drugs accomplish due to the fact that when you are out on the streets you really have no idea what's going on with people that abuse drugs. I really didn't look around and think about what I was really doing just by helping someone acquire drugs."

Mr. Gonzalez further explained that:

> My past history reflects the person I was once was, and the person I intend to be in the near future, a devoted father and sole provider for my family a hard working young man with big dreams. God as my witness of how remorseful I am for the damage I have participated in and to start, I can assure you that I have provided true testimony of my involvement in my case to the fullest of my knowledge." (Mr. Gonzalez's letter).

Mr. Gonzalez, a 27 year old hispanic man, growing up in a gang and drug infested area of Los Angeles managed to begin a bright and successful life for himself. According to the evidence before the Court, Mr. Gonzalez did not involve himself in gangs or criminal activity. Mr. Gonzalez's only brush with the law was being under the influence of a controlled substance in 1997. Additionally, Mr. Gonzalez has been described as a loyal family member and caring friend. Mr. Gonzalez had time for people who had less than he did. Unfortunately, for a young hispanic man, growing

up in his situation, temptation finally got the better of Mr. Gonzalez's judgment.

Mr. Gonzalez will spend a significant time incarcerated thinking about his errors in judgement. However, this unique history certainly does not excuse Mr. Gonzalez's crime, but is relevant in accessing his moral blame worthiness and ultimately, to determine his sentence. Hence, Mr. Gonzalez respectfully requests that this Court consider his significant family ties and values. His extreme remorse. Employment history and his living conditions growing up in a drug and gang infested area in determining what is the appropriate sentence for this young man.

**B.     DEFENDANT'S EMPLOYMENT RECORD PURSUANT TO SECTION 581.5**

Mr. Gonzalez was continuously employed from 2000 through 2005 pursuant to the pre sentence investigation and Mr. Gonzalez's statements. Employment history is not ordinally relevant in departing from the guidelines, the Fifth Circuit held that District Court could properly consider a police chiefs unblemished record as a police officer in departing downward in a civil rights case. (United States v. Harris, 1988 U.S. App. Lexis, 6043 (6th Cir. 1998). (Nevertheless, the panel remanded the case to re-sentencing as to the extent of the downward departure because the sentence was only fifteen percent of the guideline minimum). In United States. v. Handy, 752 F. Supp. 561 (D.N.Y. 1990) the Court held that the defendants continuous employment for thirteen years, and her status as a single parent of three teenage children was

extraordinary, justifying a downward departure.

More importantly, in United States v. Big Crow, 898 F. 2d 1326 (8th Cir. 1990), the District Court noted that a Native American defendants' excellent employment record and his consistent efforts to overcome the adverse environment of the Pine Ridge Reservation were proper basis for departure because they were of a magnitude not adequately taken into consideration by the guidelines. As in Big Crow, Mr. Gonzalez also grew up in significantly adverse environment. As of the character letters address, Mr. Gonzalez was raised in a gang and drug infested area of Los Angeles. Mr. Gonzalez did not involve himself in gangs. Additionally, it appears that Mr. Gonzalez attempted to work hard and try to succeed. Mr. Gonzalez specifically explained to the Court that he felt that he was on the right path "as a young Hispanic with big dreams". Unfortunately, Mr. Gonzalez actions resulted in serious criminal culpability. However, Mr. Gonzalez would respectfully request that this court consider that his environmental factors made it much more tempting to obtain drugs as it was so easily accessible.

This case appears to be similar in nature to Big Crow. In Big Crow, the court considered the defendants environmental impact from being raised on the Pine Ridge Sioux Reservation in South Dakota. In the instant case, a direct comparison can be made to the poverty stricken gang and drug infested areas of Los Angeles. Yet, Mr. Gonzalez did in fact work for a living. In fact, during his initial interview with law

enforcement, Mr. Gonzalez admitted that he was owed $30,000.00. Mr. Gonzalez indicated that he had hoped to buy a "dye cutting machine" with the $30,000.00. Mr. Gonzalez can explain to the Court that the dye cutting machine was in an effort to begin his own business. Unfortunately, starting your own business on drug proceeds is unacceptable to society and to this Court. However, this does demonstrate that Mr. Gonzalez had hoped to become a legitimate business man "with big dreams". Mr. Gonzalez would respectfully request that this Court seriously consider Mr. Gonzalez's environment in which he was raised as a mitigating circumstance as the court did in Big Crow. Mr. Gonzalez would respectfully request that this Court consider his efforts to be employed and stay away from the gang culture. Mr. Gonzalez accepts responsibility for his failure to ultimately stay away from the fast of easy life style and the drug trade.

**C. DISPARITY IN SENTENCING**

In the instant case, Mr. Gonzalez would respectfully request that this Court note that the pre-sentence report recommends a significantly higher sentence for Mr. Gonzalez than his equally (if not more so) culpable co-defendants received. Parole and Probation recommend a base offense level of 33 with a criminal history category of 1 (pre-sentence report, pp. 11-12). Based on this recommendation, and the government's agreements to request the low end of the guidelines, Mr. Gonzalez would be sentenced to 135 months if the Court followed the government and Parole and Probation's recommendation. The best analysis for Mr. Gonzalez under the

federal sentencing guidelines would be 135 months equating to 11 years, 3 months.

A review of the pre-sentence report provides information on the sentence received by three of Mr. Gonzalez' co-defendant's (pre-sentence report, pp. 5-6, paragraphs 10-12). Mr. Vinah Sivongxay, received a 78 month sentence of imprisonment. Mr. Lawrence Alcasid, received a sentence of 70 months imprisonment. Sanny Pacis received a sentence of 84 months imprisonment.

According to the pre-sentence report, on April 25, 2005, agents delivered packages of large amounts of methamphetamine to an individual who informed investigators that he had received the drugs from Lawrence Alcasid in Las Vegas, Nevada. The pre-sentence report states, "Alcasid was a multi-pound drug distributer who was distributing drugs in Las Vegas and Hawaii (pre-sentence report, pp. 6, paragraph 14). In fact, a confidential informant agreed to cooperate with authorities to conduct a narcotics transaction with Mr. Alcasid, and that the confidential informant owed Mr. Alcasid $90,000.00. This would establish that Mr. Alcasid was in fact a multi-pound narcotics dealer (pre-sentence report, pp. 7, paragraph 15). Mr. Alcasid was arrested in Honolulu.

Mr. Alcasid admitted to authorities that he had been distributing methamphetamine since 2004. Mr. Alcasid stated that he and his co-defendant Vin Sivongxay purchased two and a half pounds of methamphetamine for $26,000.00 from another individual. Mr. Alcasid indicated that both he and co-defendant Sivongxay, purchased four pounds of methamphetamine on behalf of Sanny Pacis for $86,000.00.

Both co-defendant's were involved in the packaging and mailing of this methamphetamine to Honolulu.

Mr. Alcasid admitted to investigators that he purchased five pounds of methamphetamine from Mr. Henry Roe in February of 2005. Mr. Alcasid was clearly a large scale narcotics trafficker. Mr. Alcasid involved himself in drug dealing in Las Vegas and also physically going to Hawaii to complete his trafficking and to ensure greater profit. Mr. Alcasid received a sentence of 70 months. Whereas, Mr. Gonzalez is facing over 11 years imprisonment for equal criminal culpability (if not less culpability). [1] Mr. Vin Sivongxay, was also involved in large scale trafficking. The pre-sentence report indicates that he purchases two and a half pounds of methamphetamine with Mr. Alcasid. He further purchased four pounds of methamphetamine on behalf of co-defendant Sanny Pacis for $86, 000.00. Mr. Sivongxay helped package the methamphetamine and mail it to Honolulu. Obviously, this co-defendant was a significant drug trafficker. Mr. Sivongxay received a sentence of 78 months imprisonment.

Lastly, it appears that Mr. Sanny Pacis worked with both Mr. Sivongxay and Mr. Alcasid according to the pre-sentence report. These two co-defendant's purchased four pounds of methamphetamine on behalf of Mr. Pacis. Obviously, this

---

1 The argument regarding the disparity of sentences is in no way meant to inform this Court that Mr. Gonzalez does not accept full responsibility for his criminal conduct. Mr. Gonzalez does accept responsibility for his criminal conduct but would urge the Court to consider and compare his conduct to that of his co-defendant's who received a significantly lesser sentence.

co-defendant appeared to have much more control and power than the other co-defendant's. Mr. Pacis received a sentence of 84 months.

Surely, this disparity in sentences compared to criminal culpability is inherently unfair. In United States v. Tzoc-Sierra, 387 F. 3d. 978 (9th. Cir. 2004), the Court affirmed a district courts downward departure from a range of 46-47 to 36 months on the basis of disparity of sentence received by co-defendant's. In United States v. Daas, 198 F. 3d 1167 (9th Cir. 1999), the district court refused to depart for a disparity of sentence between co-defendants who had cooperated with the government. The case was reversed based upon a downward departure to equalize sentencing disparity is a proper ground for departure under the appropriate circumstances. The court noted that the record indicated that the district court believed incorrectly that it lacked the authority to depart downward based upon sentencing disparity. In United States v. Hensly, 363 F. Supp. 2d 843(W.D.V. A. 2005), where post Booker, a defendant plead guilty to distribution of methamphetamine in guidelines were from 37-46 months, court imposed a 12 month sentence to avoid a disparity with co-defendant six month sentence merely because co-defendant went to the government first. In United States v. Grey, 362 F. Supp. 2d 714 (S.D. W. V.A. 2005), in drug case where a defendant's guideline range was 97-120 months and co-defendant's was 135-168, court imposed 97 months on both because conduct comparable and similar criminal history even though defendant did not accept responsibility. More importantly, in United States v. Jaber 362 F. Supp. 2d 365 (D. Mass. 2005) in a methamphetamine conspiracy,

departure granted in part because defendant tried to cooperate repeatedly but had little to offer and "there is something troubling about the extent to which difference in sentence were driven not by difference in the crime, but by the happenstance by the way the government indicted, the jurisdictions of the indictment, and who ran to cooperate first. Because of one co-defendant's prominence, and the timing of his cooperation, the government had virtually all it needed before it got to the defendant." Therefore, the court determined that an adjustment is essential to reduce unwarranted disparity in the case.

In the instant case, Mr. Gonzalez was apparently the last of the co-defendant's to be arrested. Mr. Gonzalez was arrested in Las Vegas and after a period of time transported to Hawaii. Mr. Gonzalez admitted to the distribution of methamphetamine in Las Vegas that was eventually shipped by others to Hawaii. A review of the facts of this case indicate that Mr. Gonzalez was no more culpable than any of his co-defendants. In the instant case, Mr. Pacis received the longest sentence of the three co-defendant's. Mr. Pacis was sentenced to 84 months imprisonment. Mr. Gonzalez would respectfully request that this Court consider the significant disparity of his potential sentence compared to his co-defendant's. Mr. Gonzalez would respectfully request that this Court consider the facts of the case to determine that Mr. Gonzalez is no more culpable than these co-defendant's. Mr. Gonzalez would respectfully request that this Court sentence him in a range that is not disproportionate to the co-defendant's.

**D. <u>CONCLUSION</u>**

At first glance, Mr. Gonzalez' story is a familiar one: a young hispanic man growing up in a impoverished area of Los Angeles who falls into the narcotics trade. When the details emerge however, the nature of Mr. Gonzalez' case becomes apparent. This particular individual grew up in a hard environment and managed to remain lawful with the hopes of becoming a prominent hispanic male. Mr. Gonzalez a devoted family member and a loyal friend. Mr. Gonzalez was a hardworking young hispanic male who failed to refuse the temptation of the fast life and the easy money of the narcotics trade. In the time Mr. Gonzalez has spent incarcerated, he has attempted to communicate his desire and ability to change the course of his life.

///

///

///

///

///

///

///

///

///

For all the reasons stated above, Mr. Gonzalez respectfully requests that this Court impose a sentence consistent with his co-defendants.

DATED this 4th day of October, 2006.

Respectfully submitted,


   /s/ Birney B. Bervar
CHRISTOPHER R. ORAM, ESQ.
Nevada Bar #004349
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada, 89101
(702) 384-5563

BIRNEY B. BERVAR (Bar No. 5482)
BERVAR & JONES
1001 Bishop Street
1400 Pauahi Tower
Honolulu, Hawaii 96813

Attorneys for Defendant
ALBERTO GONZALEZ

CHRISTOPHER R. ORAM, ESQ.
Nevada State Bar #004349
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 384-5563
BIRNEY B. BERVAR (Bar No. 5482)
BERVAR & JONES
1001 Bishop Street
1400 Pauahi Tower
Honolulu, Hawaii 96813

Attorneys for Defendant
ALBERTO GONZALEZ

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

* * * * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ALBERTO GONZALEZ,<br><br>Defendants. | Criminal No. 05-00235-JMS<br><br>**CERTIFICATE OF SERVICE** |

I HEREBY CERTIFY that on the 4th day of October, 2006, I mailed a true and correct copy of the foregoing **DEFENDANT'S MOTION FOR CONSIDERATION OF MITIGATION AND/OR DOWNWARD DEPARTURE FROM THE ADVISORY GUIDELINES**, in an envelope, via

United States Mail, postage fully paid, addressed as follows:

MARK A. INCIONG, ESQ.
Assistant United States Attorney
300 Ala Moana Blvd., Room 6-100
Honolulu, Hawaii 96850
(808) 541-2850

          /s/ Mary Bartlett